UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

OPENEVIDENCE, INC.,

                     Plaintiff,

          -against-

PATHWAY MEDICAL, INC., AND LOUIS
MULLIE,

                     Defendants.

Case No. 1:25-cv-10471-MJJ

Leave to File excess pages granted
on June 11, 2025 (Doc. No. 27)

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS ON BEHALF OF
## DEFENDANTS

KAUFMAN BORGEEST & RYAN LLP
*Attorneys for Defendants*
**PATHWAY MEDICAL, INC., and
LOUIS MULLIE**
LISA FLEISCHMANN (*pro hac vice*)
BETSY D. BAYDALA (*pro hac vice*)
HENRY B. TILSON (BBO 682207)
200 Summit Lake Drive, 1st Floor
Valhalla, New York 10595
Telephone: (914) 449-1000
Facsimile: (914) 449-1100
Email: lfleischmann@kbrlaw.com

MORRISON & FOERSTER LLP
*Attorneys for Defendant*
**PATHWAY MEDICAL, INC.**
DANIEL P. MUINO (*pro hac vice*)
KAYLEE C. BANKSTON (*pro hac vice
forthcoming*)
CAROLYN M. HOMER (*pro hac vice*)
DAVID NATHANIEL TAN (*pro hac vice*)
2100 L St., NW, Suite 900
Washington, D.C. 20037
Telephone:  (202) 887-1500

Facsimile:   (202) 637-2201
Email: dmuino@mofo.com

Michael A. Fine (BBO No. 713088)
Morrison & Foerster LLP
200 Clarendon Street, Floor 21
Boston, MA 02116
(617)648-4795
MFine@mofo.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ................................................................................................. 2

STANDARD OF REVIEW ................................................................................................... 5

ARGUMENT ......................................................................................................................... 6

   A.   OpenEvidence Fails to State a Claim for Misappropriation of Trade Secrets (Count I) ..... 6

      1.   OpenEvidence Fails to Identify a Trade Secret ............................................................ 7

      2.   OpenEvidence Does Not Plead Misappropriation ....................................................... 8

   B.   OpenEvidence Fails to State a Claim under the Computer Fraud and Abuse Act (Count II) ............................................................................................................................. 9

      1.   The CFAA Does not Apply to Public Websites ........................................................ 10

      2.   OpenEvidence Fails to Plead that Pathway Obtained "Computer Information." .......... 11

   C.   OpenEvidence Fails to State a Claim for Breach of its Terms of Use (Count III) ............ 12

   D.   OpenEvidence Fails to State a DMCA Circumvention Claim (Count IV) ....................... 14

      1.   OpenEvidence Fails to State an Anti-Circumvention Claim ....................................... 14

      2.   OpenEvidence Fails to State an Anti-Trafficking Claim ............................................. 16

   E.   OpenEvidence Fails to State an Unfair Competition Claim under Mass. G.L. ch 93A, § 11 (Count V) ............................................................................................................................. 16

CONCLUSION ..................................................................................................................... 20

REQUEST FOR ORAL ARGUMENT .................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565 (2013) ................................................................ 13

*Allstate Ins. Co. v. Fougere*, 79 F.4th 172 (1st Cir. 2023) ............................................................. 6

*Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1 (1st Cir. 2021) .................................................. 20

*Armstrong v. White Winston Select Asset Funds, LLC*, No. 16-10666-JGD, 2022 WL 17981392
   (D. Mass. Dec. 27, 2022) .......................................................................................................... 18

*Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813 (2014) ................................... 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 5

*Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579 (1st Cir. 2007) ................................... 12

*Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672 (2016) ............................................................... 12

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178 (Fed. Cir. 2004) ........................ 14

*Cigniti Techs., Inc. v. Govinsadamy*, No. 3:23-CV-2460-L, 2024 WL 4329021 (N.D. Tex. Aug.
   7, 2024) ...................................................................................................................................... 10

*Cullinane v. Uber Techs., Inc.*, 893 F.3d 53 (1st Cir. 2018) ......................................................... 13

*Devon Energy Corp. v. Westacott*, No. CIV.A. H-09-1689, 2011 WL 1157334, at (S.D. Tex.
   Mar. 24, 2011) ........................................................................................................................... 10

*dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119 (4th Cir. 2023) .............................................. 6

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ............................................................ 15

*Egilman v. Keller & Heckman, LLP.*, 401 F. Supp. 2d 105 (D.D.C. 2005) ................................. 15

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016) ………..……...………..10

*Freeman v. Town of Hudson*, 714 F.3d 29 (1st Cir. 2013) .............................................................. 5

*H1 Lincoln, Inc. v. S. Washington St., LLC*, 489 Mass. 1 (2022) .................................................. 17

*hiQ Labs, Inc. v. LinkedIn Corp.,* 31 F.4th 1180 (9th Cir. 2022) ................................................. 10

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521 (S.D.N.Y. 2004) ................................................................................................................................. 16

*Incase, Inc. v. Timex Corp.*, 421 F. Supp. 2d 226 (D. Mass. 2006), *aff'd*, 488 F.3d 46 (1st Cir. 2007) ........................................................................................................................................ 18

*Insulet Corp. v. EOFlow Co.*, 755 F. Supp. 3d 70, 96 (D. Mass. 2024), *motion to certify appeal denied*, No. CV 23-11780-FDS, 2024 WL 5442419 (D. Mass. Nov. 1, 2024) ........................ 19

*Jet Spray Cooler, Inc. v. Crampton*, 361 Mass. 835 (1972) ........................................................... 6

*Kuwaiti Danish Comput. Co. v. Digital Equip. Corp.*, 438 Mass. 459 (2003) ............................ 18

*Lanza v. Fin. Indus. Regul. Auth.*, 953 F.3d 159 (1st Cir. 2020) .................................................. 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004) ............... 15

*LivePerson, Inc. v. 24/7 Customer, Inc.,* 83 F. Supp. 3d 501 (S.D.N.Y. 2015) ........................... 16

*Maddox v. Elsevier, Inc.*, 732 F.3d 77 (1st Cir. 2013) .................................................................... 5

*Makino, U.S.A., Inc. v. Metlife Cap. Credit Corp.*, 25 Mass. App .Ct. 302 (1988) ..................... 20

*MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928 (9th Cir. 2010) ....................................... 16

*Mohiuddin v. GoDaddy.com, LLC*, 105 Mass. App. Ct. 1117 (2025) .......................................... 18

*Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220 (1st Cir. 2012) ........................................................ 5

*Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138 (D. Mass. 2023) ..................... 7

*Power v. Connectweb Techs., Inc.*, 740 F. Supp. 3d 39 (D. Mass. 2024) ................................... 15

*Ryanair DAC v. Booking Holdings, Inc.*, 636 F. Supp. 3d 490 (D. Del. 2022) ........................... 11

*Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012) ................................ 6

*Sepulveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25 (1st Cir. 2010) ................................ 5

*Sutra, Inc. v. Iceland Express, EHF*, 04-cv-11360, 2008 WL 2705580 (D. Mass. July 10, 2008) 7

*Thornton v. Ipsen Biopharmaceuticals, Inc.*, 126 F.4th 76 (1st Cir. 2025) ................................ 5

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ................................................................ 11

*Treadwell v. John Hancock Mut. Life Ins. Co.*, 666 F. Supp. 278 (D. Mass. 1987) .................... 14

*Turner v. Hubbard Sys., Inc.*, 855 F.3d 10 (2017) ................................................................ 12

*Uncle Henry's Inc. v. Plaut Consulting Co.*, 399 F.3d 33 (1st Cir. 2005) .................................. 18

*United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201 (1st Cir. 2016) ............. 5

*Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001) .................................... 14, 16

*Van Buren v. United States*, 593 U.S. 374 (2021) ................................................................ 10

*Washington Tr. Advisors, Inc. v. Arnold,* 646 F. Supp. 3d 210 (D. Mass. 2022) ......................... 9

*Zyla v. Wadsworth, Div. of Thomson Corp.*, 360 F.3d 243 (1st Cir. 2004) ................................ 18

**Statutes**

17 U.S.C. § 1201 ................................................................................................ 14, 16

18 U.S.C. § 1030(a)(2) .............................................................................................. 11

18 U.S.C. § 1030(a)(5)(A) .......................................................................................... 12

18 U.S.C. § 1030(c)(4)(A)(I) ...................................................................................... 12

18 U.S.C. § 1030(e)(11) ............................................................................................ 11

18 U.S.C. § 1201(a)(1) .......................................................................................... 14

18 U.S.C. § 1201(a)(2) .......................................................................................... 16

18 U.S.C. § 1201(a)(3)(A) ..................................................................................... 15

18 U.S.C. § 1201(b)(1) .......................................................................................... 16

18 U.S.C. 1836(b)(1) .............................................................................................. 6

18 U.S.C. 1839(3)(A)–(B) ...................................................................................... 7

18 U.S.C. 1839(3)(A), (B) ...................................................................................... 6

Mass G.L. ch. 93A § 11 ........................................................................................ 17

## Other Authorities

Fed. R. Evid. 201 ............................................................................................... 2, 4

*Pathway Raises $1.3 Million to Scale Its AI-Powered Medical Knowledge Platform*, Business
    Wire (Oct. 14, 2021) ..................................................................................... 1, 2

*Pathway Sets a New Benchmark for Specialty Medical AI with Transparent Just-in-Time
    Reasoning*, Financial Post (May 2, 2025) ............................................................. 1

Register's Recommendation, Ninth Triennial Section 1201 Proceeding (2024).......................... 3

System Prompts, Anthropic Documentation (last updated May 22, 2025) ................................... 3

## PRELIMINARY STATEMENT

Defendant Pathway Medical has never taken nor used secrets from its competitor OpenEvidence. Plaintiff does not allege otherwise. In a Complaint rife with speculation, OpenEvidence stops short of asserting that Pathway ever accessed any non-public information on OpenEvidence's public platform. Because OpenEvidence does not—and cannot—allege that Pathway took anything protected, it fails to state a claim.

Since 2018, Pathway has been a trusted provider of accurate, up-to-date medical information. As early as October 2021—before OpenEvidence existed—Pathway had users in over 180 countries using "natural language processing and machine learning to provide evidence-based answers to clinical questions for the diagnosis and treatment of patients."[1] Far from a "copycat" (Complaint, Doc. No. 1, ¶ 1), Pathway is an innovator and leader in clinical decision support. Pathway's model recently scored a record 96% on the United States Medical Licensing Examination, surpassing all artificial intelligence competitors including OpenEvidence.[2]

In this "highly competitive and rapidly evolving space" of clinical artificial intelligence (Complaint ¶ 11), companies often create accounts to benchmark the competition. Although OpenEvidence asserts that Pathway's Chief Medical Officer (a Canadian physician) created an account with an inaccurate National Provider Identifier, OpenEvidence employees have engaged in comparable behavior. OpenEvidence's Technical Lead of Engineering has created a Pathway

---

[1] *Pathway Raises $1.3 Million to Scale Its AI-Powered Medical Knowledge Platform*, Business Wire (Oct. 14, 2021), https://www.businesswire.com/news/home/20211014005312/en/Pathway-Raises-%241.3-Million-to-Scale-its-AI-Powered-Medical-Knowledge-Platform.

[2] *Pathway Sets a New Benchmark for Specialty Medical AI with Transparent Just-in-Time Reasoning*, Financial Post (May 2, 2025), https://financialpost.com/pmn/business-wire-news-releases-pmn/pathway-sets-a-new-benchmark-for-specialty-medical-ai-with-transparent-just-in-time-reasoning.

account inaccurately representing himself as a credentialed physician.  Rather than acknowledge their own competitive research practice, OpenEvidence has chosen to pursue intimidation in the guise of litigation.

Plaintiff's core factual allegations concern a single 15-minute chat by Pathway's Chief Medical Officer on OpenEvidence's platform.  From that narrow hook—where nothing proprietary was acquired—OpenEvidence speculates in support of its demands for complete access to Pathway's "source code" and "internal communications," along with the wholesale destruction of Pathway's "products, services, and offerings."  *See* Complaint ¶ 34.  In other words: OpenEvidence is seeking to take over a competitor's technology and eliminate a less-funded rival because it cannot fathom how "Pathway managed to scale its competing AI-powered medical information platform at rapid speed."  Complaint ¶ 17.  The answer is found in fair competition, not theft.

Because OpenEvidence never alleges that Pathway acquired its system prompt or any other protected information, the Court should dismiss the Complaint with prejudice.

## FACTUAL BACKGROUND

Pathway Medical, Inc. and OpenEvidence, Inc. are competitors.  Complaint, Doc. No. 1, ¶ 17.  Defendant Pathway Medical, Inc. was founded in 2018.  *See* Motion to Dismiss Ex. 1.[3] Pathway has offered a clinical decision support product to medical professionals since October 2021.[4]  Plaintiff OpenEvidence, Inc. "was founded in Massachusetts in November 2021." Complaint ¶ 6.  Both companies offer generative artificial intelligence products to aid medical professionals with clinical decision-making.  *See* Complaint ¶¶ 44-47, 63-64.  These "LLM-

---

[3] The Court can take judicial notice of official government records.  *See* Fed. R. Evid. 201.
[4] *Pathway Raises $1.3 Million to Scale Its AI-Powered Medical Knowledge Platform*, Business Wire (Oct. 14, 2021), https://www.businesswire.com/news/home/20211014005312/en/Pathway-Raises-%241.3-Million-to-Scale-its-AI-Powered-Medical-Knowledge-Platform

powered chatbot" products enable "users of the platform [to] ask natural language questions" about clinical diagnoses and peer-reviewed medical research. *See* Complaint ¶¶ 46-47.

LLM-powered chatbots often use a "set of instructions provided to the AI model that define the overall context, behavior, and tone the AI should use when responding to user queries." *See* Complaint ¶¶ 48. This is known as a "system prompt." As described by the U.S. Copyright Office, a "system prompt" describes "the practice of prepending or appending unseen text to user prompts to guide the model's behavior."[5] "For example, a system prompt might be: 'System: You are a chat assistant designed to provide helpful and not harmful responses to user queries.'"[6] System prompts are "typically" not visible to end users. Complaint ¶ 31.[7] OpenEvidence alleges that its "system prompt" is proprietary. *See* Complaint ¶¶ 48-52, 62. OpenEvidence's lawsuit does not disclose its system prompt, even under seal to the Court.

OpenEvidence alleges that on or around November 9, 2024, Pathway attempted to learn OpenEvidence's system prompt by conversing with the OpenEvidence chatbot. Complaint ¶ 74. This occurred during "a single 15-minute chat on OpenEvidence's public platform." Complaint, Ex. E at 1. OpenEvidence does not allege that Pathway succeeded in obtaining any portion of the system prompt.[8] *See* Complaint ¶¶ 1, 2, 3, 74, 76, 79, 80 (only describing attempts). Nor does OpenEvidence allege that Pathway has used a system prompt to improve or enhance Pathway's

---

[5] Register's Recommendation, Ninth Triennial Section 1201 Proceeding (2024) at 126-127, available at https://www.copyright.gov/1201/2024/.

[6] *Id.*

[7] Some leading AI companies, such as Anthropic, publicly disclose their system prompts. *See, e.g.* System Prompts, Anthropic Documentation, https://docs.anthropic.com/en/release-notes/system-prompts (last updated May 22, 2025).

[8] OpenEvidence omits its chatbot's responses to the challenged queries. *See* Complaint Ex. E at 1 ("The full transcripts would confirm that no sensitive data was disclosed[.]"). In fact, the answers were variations on "This question is outside the scope of OpenEvidence." The Court need not consider that fact to resolve Defendants' motion to dismiss.

competitive offerings. *See* Complaint ¶ 81-83 (alleging acquisition and use only "on information and belief"). Although OpenEvidence alleges it has invested resources and developed "additional technical restraints" to block Pathway's accounts going forward, it does not allege any actual harm to its technical systems or intellectual property. *See* Complaint ¶ 87-88.

OpenEvidence blocked Pathway's accounts even though OpenEvidence "provides free, unlimited access to all healthcare providers," as well as "free, limited access to its platform to the public." Complaint ¶¶ 53-54; Ex. A. Typically, upon registration, OpenEvidence asks United States healthcare professionals to enter their National Provider Identifier ("NPI"). Complaint ¶¶ 54-55. OpenEvidence's purpose in asking for identification is "to ensure that its registered users are bona fide licensed healthcare providers." Complaint ¶ 55. Although the Complaint does not contain facts about how OpenEvidence handles international healthcare providers, the Terms of Use appear to account for variation by not requiring NPIs to verify healthcare professionals. *See* Complaint Ex. A at 1.

Pathway Medical's Chief Medical Officer is Dr. Louis Mullie (Complaint ¶ 22), a licensed medical professional in Canada. *See* Motion to Dismiss Ex. 2.[9] OpenEvidence alleges that Dr. Mullie entered a non-valid NPI in order to obtain access to OpenEvidence. Complaint ¶ 67. As a Canadian medical professional, Dr. Mullie does not have an NPI. Dr. Mullie's account was otherwise created using his real name and email address. *See* Complaint Ex. C at 1 ("Pathway team members used their real names"); *id.*, Ex. D at 1 (showing transcript from "Louis Mullie").

Although OpenEvidence criticizes Dr. Mullie, OpenEvidence has engaged in comparable behavior. OpenEvidence team members, including their non-medical Technical Lead of Engineering, have also "used placeholder or non-valid National Provider Identifiers (NPIs) to

---

[9] The Court can take judicial notice of official government records. *See* Fed. R. Evid. 201.

access Pathway's functionality." *See* Complaint Ex. C at 1. This "reflects a shared industry practice of evaluating competitive offerings[.]" *Id.*

## STANDARD OF REVIEW

In evaluating a Fed. R. Civ. P. 12(b)(6) motion to dismiss, courts accept "as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party." *Thornton v. Ipsen Biopharmaceuticals, Inc.*, 126 F.4th 76, 78 (1st Cir. 2025) (cleaned up). Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions"; a "formulaic recitation of the elements of a cause of action" is not enough. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This Court may consider the facts alleged in the complaint and annexed exhibits that are referenced in the complaint. *Freeman v. Town of Hudson*, 714 F.3d 29, 35–36 (1st Cir. 2013). Moreover, "within the Rule 12(b)(6) framework, a court may consider matters of public record and facts susceptible to judicial notice." *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 208 (1st Cir. 2016).

Plaintiffs' alleged facts, when taken together, must be sufficient to "state a claim to relief that is plausible on its face." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard invites a two-step pavane." *Id.* First, "the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012). Second, "the court then must determine whether the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted). "[T]he combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." *Sepulveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). Well-pleaded facts are "non-conclusory, non-speculative" facts. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir.

2012).  If the factual allegations set forth in the complaint "are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  *Lanza v. Fin. Indus. Regul. Auth.*, 953 F.3d 159, 163 (1st Cir. 2020) (citations and internal quotation marks omitted).

## ARGUMENT

**A.    OpenEvidence Fails to State a Claim for Misappropriation of Trade Secrets (Count I)**

OpenEvidence fails to plead that (1) OpenEvidence identified a protected trade secret, and that (2) Defendants misappropriated that trade secret.  OpenEvidence does not identify what secret, precisely, Defendants took.  OpenEvidence further fails to allege that Pathway took anything at all.  Where there is no acquisition/appropriation, there can be no misappropriation.

The DTSA permits "[a]n owner of a trade secret that is misappropriated" to file suit "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).  To establish a claim under the DTSA, the plaintiff must demonstrate "(1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secret implicates interstate or foreign commerce."  *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 141 (4th Cir. 2023) (citation omitted).  "In determining whether information constitutes a trade secret, both the DTSA and Massachusetts common law consider the steps taken to protect the information."  *Allstate Ins. Co. v. Fougere*, 79 F.4th 172, 192 (1st Cir. 2023).  *See Jet Spray Cooler, Inc. v. Crampton*, 361 Mass. 835, 840 (1972) (identifying "the extent of measures taken by the employer to guard the secrecy of the information" as a relevant factor in determining a trade secret).  Under 18 U.S.C. § 1839(3)(A), (B), for information to qualify as a trade secret, the owner must take "reasonable measures to keep such information secret," and the

information must "derive[ ] independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means." 18 U.S.C. § 1839(3)(A)–(B).

OpenEvidence fails to plead the first two elements: (1) while OpenEvidence broadly asserts its system prompt is a trade secret, it has not disclosed the contents or described the specific elements which qualify for protection, and (2) OpenEvidence has not pled that Pathway actually misappropriated its system prompt.

### 1.    OpenEvidence Fails to Identify a Trade Secret

OpenEvidence's general statements that its system prompt is a trade secret is insufficient to support its DTSA claim.  A plaintiff must "adequately" describe the asserted trade secrets "with clarity that can be understood by a lay person," *Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138, 166 (D. Mass. 2023), and "distinguish what is protectable from that which is not." *Sutra, Inc. v. Iceland Express, EHF*, 04-cv-11360, 2008 WL 2705580, at *4 (D. Mass. July 10, 2008) (citations and internal quotations omitted).  To determine whether a proposed description is adequate, "courts have required specificity, although that specificity is highly fact dependent." *Id.* (internal quotation marks and citation omitted).  "[A] court should not have to 'sift through technical data to distill out a trade secret.'"  *Neural Magic,* 659 F. Supp. 3d at 167.  Here, OpenEvidence has described system prompts with generalities and metaphors, without pleading what aspects of OpenEvidence's system prompt specifically merit trade secret protection.  *See, e.g.,* Complaint ¶ 3 ("constitutional framework"), ¶ 31 ("blueprint"), ¶ 32 ("bleeding-edge innovation"), ¶ 47 ("critical keys"), ¶ 49 ("brain"), ¶ 76 ("crown jewel").

Although OpenEvidence points to its "system prompt code" as the asserted trade secret, it does not disclose to the Court (even under seal) what that "system prompt code" is.  *See* Complaint ¶ 74.  Instead, OpenEvidence vaguely alleges that the system prompt "represents" underlying algorithms, provides "background and situational context," sets the LLM's "personality," and

communicates rules.  Complaint ¶ 3.  But OpenEvidence nowhere describes or discloses the custom-tailored context and personality actually in use by OpenEvidence.  This vague wording fails to identify any protectable elements and therefore fails to plead a trade secret.  *See Sutra*, 2008 WL 2705580, at *4.  OpenEvidence's allegations later in the Complaint about the efforts undertaken to keep the system prompt confidential do not overcome the fundamental defect to plead specific protectable elements.  *See, e.g.*, Complaint ¶¶ 79, 80, 99, 103, 110.  A company cannot convert publicly-available information into a proprietary trade secret just by locking it in a safe.

OpenEvidence even passingly acknowledges that a system prompt is not, *per se*, a trade secret.  *See* Complaint ¶ 71.  OpenEvidence alleges that a system prompt instructs an LLM on how to respond to questions, "*typically* without being directly visible to the end-user" while acknowledging that "*many* companies, including [OpenEvidence], take measures to restrict models from divulging their system prompts" (emphasis added).  OpenEvidence pleads no facts or details to explain why *its* system prompt, over and beyond publicly-available system prompts, is entitled to trade secret protection.

### 2.  OpenEvidence Does Not Plead Misappropriation

Regardless of whether OpenEvidence identified a protectible trade secret, OpenEvidence's claim fails to plead that Defendants actually "acquired or disclosed" the system prompt.  OpenEvidence merely alleges "attempts" by Pathway to acquire the system prompt, not success.  *See* Complaint ¶¶ 101, 103.  That is not enough.  Misappropriation requires acquisition.  Section 1839(5)(A), (B) defines "misappropriation" as requiring:

> (A)    acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

> (B)    disclosure or use of a trade secret of another without express

> or implied consent by a person who—
>
> > (i)    used improper means to acquire knowledge of the
> > trade secret[.]

"Misappropriation requires the acquisition or disclosure of a trade secret with knowledge that the trade secret *was acquired* by improper means." *Washington Tr. Advisors, Inc. v. Arnold,* 646 F. Supp. 3d 210, 217 (D. Mass. 2022) (emphasis added) (finding no misappropriation took place). The statute does not proscribe an *attempt* to acquire or disclose.

Here, OpenEvidence does not allege that Defendants acquired or disclosed anything. Instead, based on one 15-minute conversation where Pathway did *not* obtain anything proprietary, OpenEvidence speculates "upon information and belief" that Pathway *might* have acquired the system prompt by another means. *Compare* Complaint ¶¶ 1, 2, 3, 74, 76, 79, 80; Ex. E at 1 *with* Complaint ¶¶ 14, 81-83. Such allegations that misappropriation was "merely conceivable," are insufficient to state a claim. *Sepulveda-Villarini*, 628 F.3d at 29.

OpenEvidence's trade secret misappropriation claim should be dismissed.

**B.    OpenEvidence Fails to State a Claim under the Computer Fraud and Abuse Act (Count II)**

OpenEvidence fails to plead a violation of the Computer Fraud and Abuse Act ("CFAA"). CFAA claims are not viable where the subject computer system is a public website, or where the user has not exceeded his or her technical access authority, or where the alleged injury falls outside of the CFAA's damages parameters. OpenEvidence stretches the CFAA beyond recognition by contending that a licensed medical professional conversing with an AI chatbot on a publicly-available website engaged in "cyberattacks." *See* Complaint ¶ 7. At a minimum, the CFAA claim fails because OpenEvidence does not allege that the "attack" succeeded, and therefore caused any cognizable harm.

The elements of a CFAA claim are as follows:

(1)     The defendant:

      a.     "intentionally accesses a computer without authorization," or

      b.     "exceeds authorized access;" and

(2)     Thereby obtains computer information.

*See Van Buren v. United States*, 593 U.S. 374, 379 (2021). "Courts have held that the CFAA must be construed narrowly, even in civil actions, because the same sections that give rise to civil remedies also give rise to criminal penalties." *Cigniti Techs., Inc. v. Govinsadamy*, No. 3:23-CV-2460-L, 2024 WL 4329021, at *13 (N.D. Tex. Aug. 7, 2024) (quoting *Devon Energy Corp. v. Westacott*, No. CIV.A. H-09-1689, 2011 WL 1157334, at *10 (S.D. Tex. Mar. 24, 2011)) (collecting cases). Similarly, a "violation of the terms of use of a website—without more—cannot establish liability under the CFAA." *See Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016).

Because the Complaint's allegations only indicate that Pathway accessed a public platform, while obtaining nothing, OpenEvidence fails to plead a CFAA claim.

**1.     The CFAA Does not Apply to Public Websites.**

The CFAA does not apply to public websites like OpenEvidence. *hiQ Labs, Inc. v. LinkedIn Corp.,* 31 F.4th 1180, 1199 (9th Cir. 2022). In *hiQ Labs*, the Ninth Circuit noted that "a defining feature of public websites is that their publicly available sections lack limitations on access." *Id*. OpenEvidence offers free, limited access to its service to the public, and free unlimited services to all healthcare provider account-holders. Complaint ¶¶ 53-54; Ex. A. The content that Pathway members accessed "is not restricted to authorized users and is currently publicly available without requiring any login at www.openevidence.com." Complaint, Ex. C at 1. Under *hiQ*, OpenEvidence's website, which at the time of the alleged improper conduct could be accessed without a username or password, was a public website not subject to the CFAA.

2.     **OpenEvidence Fails to Plead that Pathway Obtained "Computer Information."**

As discussed above at Argument § A, OpenEvidence never pleads that Pathway obtained any proprietary information from OpenEvidence; rather, OpenEvidence alleges only that Pathway attempted or threatened to obtain trade secrets through allegedly unauthorized access. Because OpenEvidence does not allege that Defendants actually obtained "computer information" through alleged unauthorized access, § 1030(a)(2), the CFAA claim must be dismissed.

3.     **OpenEvidence's damages claims are speculative**

Federal statutory claims require plaintiffs to allege concrete injuries. *See generally TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021). Section 1030(a)(5)(A) of the CFAA requires damage to the plaintiff's computer systems. "The harm or damage contemplated by the CFAA includes slowdowns, disruptions in service, crashes, or other impairments to the availability or accessibility of the systems or data, as well as changing, altering, deleting, or destroying any data, programs, systems, or other information on the plaintiff's computer systems." *Ryanair DAC v. Booking Holdings, Inc.*, 636 F. Supp. 3d 490, 504 (D. Del. 2022) (citations and quotation marks omitted). The term "loss" relates to costs caused by harm to computer data, programs, systems, or information services. § 1030(e)(11). "The statutory definitions of 'damage' and 'loss' thus focus on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data." *Van Buren*, 593 U.S. at 391–92.

OpenEvidence does not allege that it sustained any such damage to its "system." Although OpenEvidence claims that it sustained $5,000 or more in damages because of its work to block Pathway-affiliated accounts (Complaint ¶¶ 87, 119), that is not the proper calculation. OpenEvidence does not allege that Pathway's conversations on its free and public website caused any damage to or impaired OpenEvidence's "system"; or that they changed or altered

OpenEvidence's system in any manner; or that Defendants intended to damage OpenEvidence's platform by extracting the source prompt. All OpenEvidence alleges is that it took measures to block a competitor's accounts from using the platform. Blocking competitive accounts which have not caused actual harm is not a cognizable form of damages. Absent allegations that Pathway actually took and used OpenEvidence's trade secrets, OpenEvidence's harm is speculative. Prospective damages are insufficient to plead a claim under §§ 1030(a)(5)(A); 1030(c)(4)(A)(I). *See Turner v. Hubbard Sys., Inc.*, 855 F.3d 10, 14 (1st Cir. 2017).

OpenEvidence's CFAA claim should be dismissed.

## C. OpenEvidence Fails to State a Claim for Breach of its Terms of Use (Count III)

OpenEvidence fails to plead a Massachusetts breach of contract claim because (1) it does not plead its Terms of Use are an enforceable contract and (2) OpenEvidence did not sustain any injury under any purported contract.

To prevail on a breach of contract claim under Massachusetts law, a plaintiff must prove (1) there existed an agreement between the parties; that was (2) supported by consideration; (3) the plaintiff was ready, willing, and able to perform his or her part of the contract; (4) the defendant committed a breach of the contract; and the plaintiff suffered harm as a result. *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016). *See also Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007). OpenEvidence fails to plausibly state the existence of a valid contract or that OpenEvidence suffered any harm from an alleged breach.

First, OpenEvidence's allegations do not sufficiently support the existence of an enforceable contract. OpenEvidence suggests that by using OpenEvidence's services, a user agrees to be bound by the user terms. Complaint ¶¶ 13, 66–70; ¶ 68. But no prompt appears for an unregistered user to agree to the Terms of Use. The Terms of Use themselves acknowledge the gap, including clauses acknowledging that unregistered users can use the service. *See* Complaint

¶¶ 123-124, Ex. A at 1 ("By using the Services, you agree to these Terms, whether or not you are a registered member of the Company's Open Evidence Platform…. If you do not agree to all of these Terms of Use, do not use the Services!").  Under Massachusetts law, online forms that do not require a user to "accept" its terms are unenforceable "browsewrap" agreements.  *Cullinane v. Uber Techs., Inc.,* 893 F.3d 53, 61 (1st Cir. 2018) (citing *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 576 (2013), *aff'd*, 478 Mass. 169 (2017)).  Accordingly, OpenEvidence's Terms of Use is not an enforceable contract under Massachusetts law.

Second, even if OpenEvidence sufficiently alleged the existence of an enforceable contract, it still fails to plead any harm stemming from the purported breach.  The platform is open to the public and medical professionals.  Complaint ¶¶ 53-54; Ex. A.  The mere existence of an account with some inaccurate registration information (Complaint ¶¶ 54-55, 67), or the transcription of a user conversation that went nowhere (Complaint ¶ 74), is not a cognizable harm.  When Pathway asked OpenEvidence to provide "clear and specific explanations of any economic or competitive harm allegedly attributable to Pathway's interactions with OpenEvidence's platform" (Complaint, Ex. C at 2), OpenEvidence ignored the question (Complaint, Ex. D).  This is because there was none.  As discussed in Argument § A, above, OpenEvidence only alleges that Defendants "attempted or threatened" to obtain OpenEvidence's system prompt.  Everything else, about potential downstream effects, are speculative allegations made only on information and belief.  *See* Complaint ¶ 83.  OpenEvidence lacks allegations of any actual harm.  *See generally Treadwell v. John Hancock Mut. Life Ins. Co.*, 666 F. Supp. 278, 288 (D. Mass. 1987) (dismissing breach of contract claims where alleged breaches could not be the basis of legally recoverable damages).

OpenEvidence's breach of contract claim should be dismissed.

13

**D.    OpenEvidence Fails to State a DMCA Circumvention Claim (Count IV)**

Title 17 U.S.C. § 1201 defines multiple possible legal theories for violations of the Digital Millennium Copyright Act ("DMCA"), but OpenEvidence does not even bother to identify which subsection Defendants allegedly violated.  *See* Complaint ¶ 137.  The answer is none.  Pathway has neither circumvented access controls for nor trafficked in access to OpenEvidence's copyrighted works.  OpenEvidence therefore fails to state a DMCA Section 1201 claim.

**1.    OpenEvidence Fails to State an Anti-Circumvention Claim**

OpenEvidence's DMCA claim appears to arise under the "anti-circumvention" provisions of §1201(a)(1).  But just as OpenEvidence alleges no misappropriation of protected trade secrets under Count I, and no exfiltration of protected computer information under Count II, OpenEvidence does not plead circumvention under Count IV.  Congress passed Section 1201 of the DMCA to "back[] with legal sanctions the efforts of copyright owners to protect their works from piracy behind digital walls such as encryption codes or password protections."  *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 435 (2d Cir. 2001).  A DMCA anti-circumvention claim requires a plaintiff to plead that (1) it has a protected work; (2) it employs "technological measure[s] that effectively control access" to that work; and (3) Defendants circumvented those measures.  17 U.S.C. § 1201(a)(1)(A).  Anti-circumvention also requires that the alleged circumvention constitutes or facilitates copyright infringement.  *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004).  OpenEvidence fails to plead that Defendants circumvented any technological measure that controls access to protected material.

To "circumvent a technological measure means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner[.]"  § 1201(a)(3)(A).  However, as alleged in the Complaint and attachments, Dr. Mullie accessed OpenEvidence through a standard public

account he created in his own name. *See* Complaint Ex. C at 1; *id.*, Ex. D at 1. Courts in this district have held that "using a username/password combination as intended—by entering a valid username and password, albeit without authorization—does not constitute circumvention under the DMCA." *Power v. Connectweb Techs., Inc.*, 740 F. Supp. 3d 39, 59 (D. Mass. 2024) (quoting *Egilman v. Keller & Heckman, LLP*., 401 F. Supp. 2d 105, 112 (D.D.C. 2005)). Moreover, Dr. Mullie's conversational prompts could also have been entered on the public platform without an account. *See* Complaint ¶ 53 ("OpenEvidence provides free, limited access to its platform to the public."). This public access nullifies OpenEvidence's DMCA claim: Section 1201 "does not naturally extend to a technological measure that restricts one form of access but leaves another route wide open." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). Notably, the U.S. Copyright Office's most recent report on Section 1201 concludes that because allegedly adversarial prompts on artificial intelligence systems are technologically indistinguishable from ordinary user prompts, they do not qualify as circumvention. *See* Register's Recommendation, Ninth Triennial Section 1201 Proceeding (2024) at 127-129 ("[T]he Register finds that section 1201 does not inhibit the research described by proponents to the extent they seek to circumvent algorithmic safeguards via adversarial prompting and fine-tuning.").

Even if OpenEvidence had alleged a recognizable access control, its anti-circumvention claim would still fail because the Complaint does not allege that Pathway circumvented anything. *See* 17 U.S.C. § 1201(a)(1)(A). "The DMCA 'targets the *circumvention* of digital walls guarding copyrighted material.'" *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 532 (S.D.N.Y. 2004) (quoting *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 453 (2d Cir. 2001) (emphasis in original)). A plaintiff must allege that the defendant "affirmatively

perform[ed] an action that disables or voids the measure" that effectively controls access. *LivePerson, Inc. v. 24/7 Customer, Inc.,* 83 F. Supp. 3d 501, 509 (S.D.N.Y. 2015) (citation omitted). Although OpenEvidence alleges Pathway attempted to void (unspecified) measures protecting OpenEvidence's system prompt, OpenEvidence never alleges the circumvention was successful. *See* Argument § A, above. Accordingly, Plaintiff fails to state an anti-circumvention claim.

### 2. OpenEvidence Fails to State an Anti-Trafficking Claim

Pathway does not understand OpenEvidence to be asserting a DMCA claim under §§ 1201(a)(2) and 1201(b)(1) (the "anti-trafficking" provisions), but if OpenEvidence tried it would fail. Section 1201(a)(2) prohibits trafficking in technological measures that circumvent access to copyrighted works, and § 1201(b)(1) prohibits trafficking in technologies that circumvent technological measures that protect the copyrighted works themselves. *See MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 944 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011). OpenEvidence makes no allegation that Pathway is selling its own product or services for the purpose of enabling other users to circumvent OpenEvidence's access controls. Accordingly, OpenEvidence does not state an anti-trafficking claim.

OpenEvidence's DMCA claim should be dismissed.

## E. OpenEvidence Fails to State an Unfair Competition Claim under Mass. G.L. ch 93A, § 11 (Count V)

OpenEvidence fails to state a Mass. G.L. ch 93A, § 11 claim against Pathway. As with its DTSA claim, OpenEvidence fails to plead sufficient facts to support its claim that Pathway engaged in an unfair practice that caused OpenEvidence any harm.

The elements of a claim under ch. 93A § 11 are:

    1.    "[A]n unfair or deceptive act or practice"

2.    Occurring "primarily and substantially" in Massachusetts

3.    "[I]n the conduct of any trade or commerce" that

4.    Causes harm to a business.

Mass G.L. ch. 93A § 11; *see also H1 Lincoln, Inc. v. S. Washington St., LLC*, 489 Mass. 1, 14 (2022). OpenEvidence attempts to shoehorn its federal trade secret misappropriation claim (Count 1) into a follow-on state law unfair competition violation (*see* Complaint ¶ 142), but this is not a viable claim.

First, OpenEvidence fails to plead that Defendants engaged in an unfair act or practice because it does not allege that Pathway misappropriated any trade secrets. *See* Argument § A, above. Massachusetts courts consider three factors when determining if an act was unfair or deceptive: "(1) whether the conduct is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers or other businesses." *H1 Lincoln, Inc*, 489 Mass. at 14 (internal quotation marks and citations omitted) (alteration in original).

OpenEvidence does not allege that Defendants committed any unfair act. As Defendants explained above, OpenEvidence fails to state that Defendants acquired or misappropriated any alleged trade secret. *See* Argument § A.2. Without acquisition, there is no misappropriation. Moreover, OpenEvidence fails to allege what its protected trade secret even is. *See* Argument § A.1. "A chapter 93A claim cannot succeed merely upon the unauthorized use, disclosure, or infringement of information developed by one party where that information does not rise to the level of protected intellectual property." *Incase, Inc. v. Timex Corp.*, 421 F. Supp. 2d 226, 240 (D. Mass. 2006), *aff'd*, 488 F.3d 46 (1st Cir. 2007).

17

Second, OpenEvidence fails to plead that Pathway's alleged "unfair or deceptive act or practice occurred primarily and substantially within the commonwealth," which is reason alone to dismiss the claim. *Mohiuddin v. GoDaddy.com, LLC*, 105 Mass. App. Ct. 1117 (2025); *Zyla v. Wadsworth*, *Div. of Thomson Corp.*, 360 F.3d 243, 255 (1st Cir. 2004). Massachusetts courts use a fact-based inquiry to determine whether the "center of gravity of the circumstances that gave rise to the claim is primarily and substantially within the Commonwealth." *Kuwaiti Danish Comput. Co. v. Digital Equip. Corp.*, 438 Mass. 459, 473 (2003). "[O]nly the defendant's unfair and deceptive acts are relevant; other contacts with Massachusetts "do not play a part in this assessment." *Armstrong v. White Winston Select Asset Funds, LLC*, No. 16-10666-JGD, 2022 WL 17981392, at *24 (D. Mass. Dec. 27, 2022) (citation omitted). "Where alleged wrongdoing is not focused on Massachusetts, but has relevant and substantial impact across the country, the 'primarily' requirement is not satisfied." *Neural Magic*, 659 F. Supp. 3d at 182–83 (D. Mass. 2023) (citing *Uncle Henry's Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 45 (1st Cir. 2005)).

Here, OpenEvidence's allegations are insufficient to show that the center of gravity of the circumstances giving rise to the claim is "primarily and substantially" within Massachusetts because it never pleads that Pathway's alleged unfair practices occurred in Massachusetts. In fact, OpenEvidence fails to allege that Pathway took any action in Massachusetts. Complaint ¶ 141. Pathway is a Canadian corporation with its principal place of business in Montreal, and Dr. Mullie is a Canadian citizen. Complaint ¶¶ 21-22. The gravamen of OpenEvidence's claim is that Defendants allegedly attempted to acquire and misappropriate OpenEvidence's trade secrets so that Defendants could use those secrets to build Pathway's own worldwide product. *See* Complaint ¶ 139. That claim of wrongdoing is not directed, per se, at Massachusetts. Indeed, OpenEvidence pleads that Pathway's platform is available to users "around the world."

Massachusetts courts have concluded that the type of facts that OpenEvidence pleads in support of its Chapter 93A claim are either irrelevant or insufficient. This is because those facts focus on the plaintiff's injuries, not the defendant's unfair acts. "[E]ven if plaintiff suffered its injuries in Massachusetts, the relevant inquiry is ascertaining the center of gravity of defendants' wrongful conduct, not plaintiff's place of injury." *Insulet Corp. v. EOFlow Co.*, 755 F. Supp. 3d 70, 96 (D. Mass. 2024), *motion to certify appeal denied*, No. CV 23-11780-FDS, 2024 WL 5442419 (D. Mass. Nov. 1, 2024) (citing *Neural Magic*, 659 F. Supp. 3d at 183). Thus, OpenEvidence's allegation that Defendants attempted to access its trade secret in order to target two of OpenEvidence's Massachusetts-based customers, Harvard Medical School and Mass. General Brigham (Complaint ¶ 141(g)), is insufficient to state a 93A claim. Similarly ineffective are OpenEvidence's allegations that it is a Massachusetts based corporation and that its trade secret was developed in Massachusetts and located in that state at the time that Defendants tried to obtain it. Complaint ¶ 141(a)-(g). These allegations all focus on the place of injury, not on the gravity of Defendants' alleged act of wrongdoing. Therefore, they cannot support a claim under this provision. Indeed, if courts chiefly considered the place of injury, "practically no case involving a Massachusetts plaintiff would be exempt from c. 93A status, no matter how negligible the defendants' business activity in this [s]tate." *Makino, U.S.A., Inc. v. Metlife Cap. Credit Corp*., 25 Mass. App .Ct. 302, 309–10 (1988).

Third, OpenEvidence fails to plead sufficient facts to support its claim that it was harmed by Defendants' alleged unfair act or practice. To allege harm arising from a defendant's unfair or deceptive act or practice, a plaintiff "must establish both factual causation and proximate causation," *Anoush Cab, Inc. v. Uber Techs., Inc*., 8 F.4th 1, 16 (1st Cir. 2021) (internal quotation

marks and citations omitted) and allege a "distinct injury." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 823–24 (2014).

As Defendants have explained throughout this brief, OpenEvidence does not state that it was harmed. It alleges that Defendants attempted to acquire its system prompt and that it caused OpenEvidence "unclear" harm, which falls well short of a "distinct injury." Complaint ¶ 14. For the reasons stated above, OpenEvidence has failed to state any claim of harm resulting from Defendants' alleged violation of Chapter 93A, § 11.

OpenEvidence's unfair competition claim should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss should be granted. Because any amendment would be futile, the Complaint should be dismissed with prejudice.

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully request, pursuant to Local Rule 7.1(d), an opportunity to present oral argument on this motion.

Dated: Valhalla, New York
June 16, 2025

Yours, etc.,

_____
Lisa Fleischmann (*pro hac vice*)
KAUFMAN BORGEEST & RYAN LLP
*Attorneys for Defendants*
**PATHWAY MEDICAL, INC., AND LOUIS MULLIE, M.D. s/h/s LOUIS MULLIE**
BETSY D. BAYDALA (*pro hac vice*)
HENRY B. TILSON (BBO 682207)
200 Summit Lake Drive, 1st Floor
Valhalla, New York 10595
Telephone: (914) 449-1000
Facsimile: (914) 449-1100
Email: lfleischmann@kbrlaw.com

20

MORRISON & FOERSTER LLP
*Attorneys for Defendant*
**PATHWAY MEDICAL, INC.**
DANIEL P. MUINO (*pro hac vice*)
KAYLEE C. BANKSTON (*pro hac vice forthcoming*)
CAROLYN M. HOMER (*pro hac vice*)
DAVID NATHANIEL TAN (*pro hac vice*)
2100 L St., NW, Suite 900
Washington, D.C. 20037
Telephone:  (202) 887-1500
Facsimile:   (202) 637-2201
Email: dmuino@mofo.com

Michael A. Fine (BBO No. 713088)
Morrison & Foerster LLP
200 Clarendon Street, Floor 21
Boston, MA 02116
(617)648-4795
MFine@mofo.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OPENEVIDENCE, INC., | Case No. 1:25-cv-10471-MJJ |
| Plaintiff, | |
| -against- | **CERTIFICATE OF SERVICE PURSUANT TO LOCAL RULE 5.2(b)** |
| PATHWAY MEDICAL, INC., AND LOUIS MULLIE, | |
| Defendants. | |

I hereby certify that this MEMORANDUM OF LAW, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated, if any, as non-registered participants on June 16, 2025.

Dated:  Valhalla, New York
        June 16, 2025

_____
Lisa Fleischmann, Esq.